## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRENCE R. YOAST,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-720** |
| | : | |
| **POTTSTOWN BOROUGH,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                          **January 31, 2020**

Plaintiff Terrence Yoast, proceeding *pro se*, filed a 254-page Amended Complaint consisting of ninety three counts against thirty one defendants.[1] The Amended Complaint alleges federal and state claims related to Yoast's landlord-tenant relationship with Aphrodite Hussain, and law enforcement's response to the dispute; federal and state claims based on an alleged lack of medical care while Yoast was a pre-trial detainee in county jail; and state law claims against the landlord and tenants of property located near Yoast's rental property.

The thirty one defendants can be divided into three groups: 1) Hussain, the tenants and landlords of a neighboring property, and attorneys and their employers allegedly involved in Yoast's dispute with Hussain; 2) Police officers ("Pottstown Defendants") and the District Attorney's office involved in the dispute; and 3) Defendants associated with the Montgomery County Correctional Facility ("MCCF").

In addition to Hussain, Group 1 consists of Manjeet Singh, Catherine Hallinger, Leon Smith, and Adrian Smith, who are Hussain's neighbors, and Edward and Jeanne Forbes, who own the home in which the Smiths and Hallinger live. Defendant Justin O'Donoghue, a lawyer

---

[1] Doc. Nos. 50 & 52. Yoast filed a duplicate Amended Complaint as Doc. No. 52. As Doc. No. 52 contains some exhibits that are missing from Doc. No. 50, at times, this Memorandum Opinion cites to Doc. No. 52.

with Defendant Montgomery County Housing Authority ("MCHA") and a partner with Defendant Wisler Pearlstine LLP, and Defendant Donald Cheetham, an attorney employed by Defendant Legal Aid of Southeastern Pennsylvania ("Legal Aid") are also included in this group.

Within Group 2, the Pottstown Defendants are the Borough of Pottstown, Officer Anthony Fischer, Officer John Schmalbach, Officer Jacob Martin, Officer T.J. Casio, Officer Jeffrey Portock, Officer Brett Cortis, Officer Chad Hart, Officer Corey Pfister, Corporal Jamie O'Neill, Corporal Michael Long, Sergeant Michael Ponto, and former Chief Richard Drumheller. Defendant Montgomery County, and Defendant District Attorney Robert Steele, are sued based on claims stemming from Yoast's prosecution.

Within Group 3, related to his claim that he was denied medical care, Yoast has sued an unidentified John Doe defendant, Anthony Hoch, PrimeCare Medical, Ryan VanDorick, Timothy Stein, and Montgomery County.

I.     BACKGROUND[2]

A.  Harassment Charges Related to Text Messages Incidents

Yoast is the owner of a home in Pottstown, Pennsylvania which is a rental property, not his home. On November 18, 2016, Aphrodite Hussain entered into a residential lease for the second-floor unit of the home. Sometime in December 2016, Yoast and Hussain became embroiled in a dispute over the conditions of the home. As part of this dispute, on December 21, 2016, Hussain threatened Yoast with a suit for premises liability based on a slip and fall from a dislodged handrail in the apartment. Hussain notified Yoast that she had contacted a personal injury attorney who informed her that she had a viable claim against Yoast.

---

[2] Unless otherwise stated, the background is drawn primarily from the Complaint and at this stage of the proceedings is presumed to be true.

On December 27th, 2016, based on a series of text messages that Yoast sent Hussain, Officer Fischer filed a harassment charge against Yoast. Then, on January 9, 2017, based on new allegations from Hussain of harassing text messages from Yoast, and after determining that Officer Fischer had previously issued a citation against Yoast, Officer Schmalbach filed harassment charges against Yoast. The harassment charge filed by Officer Fischer was withdrawn and added to the charges filed by Officer Schmalbach.

### B.  Harassment Charges Related to Alleged Mail Theft

On January 13, 2017, Plaintiff provided notice and entered the apartment for a repair. Yoast alleges that Hussain intentionally left out an envelope from her personal injury attorney for him to see. Yoast photographed the envelope, and because he believed that the damage to the handrail had been caused by Hussain, he sent the photo to Defendant Justin O'Donoghue, a lawyer with MCHA. Yoast wanted the MCHA to amend the Complaint Inspection Report to document that Hussain caused this damage. O'Donoghue rejected Yoast's request.

Yoast further alleges that O'Donoghue was also employed as a partner at the law firm of Defendant Wisler Pearlstine LLP and, in this capacity, O'Donoghue contacted another MCHA employee and instructed her to inform Hussain that Yoast had stolen her mail. Hussain then consulted with Defendant Donald Cheetham, an attorney employed by Legal Aid. Cheetham contacted the Pottstown Police to inform them that Hussain was the victim of mail theft.[3] On February 21, 2017, after interviewing O'Donoghue and Yoast, and after allegedly receiving permission from Sergeant Ponto, Officer Portock filed a harassment charge against Yoast.

---

[3] Plaintiff refers to this incident as alleged mail fraud.

### C. Harassment and Stalking Charges Related to Washing Machine Incident

On February 26, 2017, based on Hussain's request for a new washing machine, Yoast entered the apartment to install one. While he was removing the broken washing machine from the basement, Hussain informed Yoast than he was not supposed to be on the premises. Yoast called Hussain a "bitch" and a "bum" and told her to "mind her own business." Hussain then called the police. Officer Martin arrived, interrogated Yoast, and searched him for contraband.

Corporal O'Neill and Sergeant Ponto then arrived on the scene and were informed by Defendant Manjeet Singh, a friend of Hussain's, that Yoast had said "fuck you" to Hussain. The police then ordered Yoast to leave the premises. Yoast explained that he had not entered her apartment and did not need to provide notice to enter the property, but the officers told him to gather his tools and leave. Yoast ignored the officers and went down to the basement to continue working. Despite Yoast informing the officers that they did not have permission to enter the basement, they followed him and threatened him with arrest if he did not leave.

After Yoast refused, O'Neill arrested him and transported him to the Pottstown Police Station and charged him with stalking and harassment. Plaintiff was then arraigned, and bail was set at $20,000 as requested by O'Neill. Yoast was then transported to MCCF where he was held until February 28, when he posted bail.

### D. Harassment and Stalking Charges Related to Yoast Allegedly Kicking Hussain's Car

On March 2, while picking up copies of the Criminal Complaint that O'Neill filed, Yoast spoke to Officer Casio[4] and told him that he needed to visit the property to take pictures but was worried that Hussain would cause him problems. Yoast asserts that Officer Casio told him that it

---

[4] Although Yoast refers to him as Officer Cascio, his name appears to be Casio.

would not be an issue because he owned the property and that, even though there was a stalking charge filed against him, he would not be arrested. Based on Officer Casio's reassurances, Yoast drove to the property, took some photographs, and then drove away. However, he was pulled over by Officer Portock six block away. When Officer Portock asked Yoast why he was at the property, Yoast explained that he had to take photographs and that Officer Casio told him that there would not be any issues with doing so. However, after conversing with other police officers who were in his police cruiser, Officer Portock returned and arrested Yoast. Officer Portock explained that Yoast was under arrest for kicking Hussain's car. Officer Portock based this assertion on Defendant Catherine Hallinger's report that Yoast was yelling and kicking Hussain's car and Defendant Leon Smith's report that he heard a disturbance, both of which were reported to Officer Cortis. Defendants Adrian and Leon Smith reside in a home owned by Defendants' Edward and Jeanne Forbes, which is approximately 40 feet away from Yoast's property. Hallinger is Leon Smith's girlfriend and resides in the home as well.

Officers Portock and Hart then transported Yoast to the police station. Yoast was charged with stalking and harassment. Officer Portock, after discussion with other police officers including Chief Drumheller, Portock, O'Neill, and Ponto, requested that bail be set at $1 million. At his arraignment, Officer Pfister advocated that bail be set at $1 million. Yoast's bail was set at $99,000. Bail conditions that Yoast would not enter the Borough of Pottstown or enter the property he owned were also imposed. After approximately seven hours spent at the Pottstown Police Station, Officer Long transported Yoast to MCCF.

### E. Denial of Medical Care

When Yoast arrived at MCCF on March 2, he informed an unidentified John Doe defendant that he suffered from sleep apnea and requested that the facility provide him with a

CPAP machine. Doe informed Yoast that due to the early hour he could not provide Yoast with the machine but that he would submit Yoast's request to the proper authorities.

Two days later, Yoast had a consultation with Defendant Anthony Hoch, a certified medical assistant employed by Defendant PrimeCare Medical Inc. Yoast told Hoch that he suffered from sleep apnea and requested a CPAP machine. Hoch asked Yoast if a family member or friend could bring the machine "if necessary," and Yoast said yes. Hoch then told Yoast that he would check if the facility had an available CPAP machine.

On March 6, not having received a CPAP machine, Yoast spoke with Defendant VanDorick, a correctional officer, and requested a CPAP machine. VanDorick refused him. Three days later, Yoast asked Defendant Stein, another correctional officer, for a CPAP machine but Stein refused, explaining to Yoast that everyone has sleep apnea in jail. On March 11, nine days after he was incarcerated, Yoast posted bail.

## F. The Prosecution

On September 1, 2017, an Information charging Yoast with multiple counts of harassment and stalking, all of which were misdemeanors or summary offenses, related to Yoast's alleged actions towards Hussain, was filed by either Assistant District Attorney Hughes or Ringwood[5] and approved by Defendant Montgomery County District Attorney Robert Steele. After a bench trial, Yoast was convicted of two summary offenses of harassment—one stemming from the washing machine incident and the other from the car kicking incident.

---

[5] Neither Hughes nor Ringwood are sued in the Amended Complaint.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[6] and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[7] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."[8] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[9]

Where the plaintiff is *pro se*, the allegations must be liberally construed and evaluated under a less stringent standard than a pleading prepared by an attorney.[10] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[11] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[12] it "need not accept as true

---

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).
[7] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).
[8] *Twombly*, 550 U.S. at 555 (citations omitted).
[9] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558–59.
[10] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[11] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).
[12] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted).

"unsupported conclusions and unwarranted inferences,'"[13] or the plaintiff's "bald assertions" or "legal conclusions."[14]

## III.    DISCUSSION

### A.    § 1983 Claims Against the Pottstown Defendants,[15] Legal Aid, Cheetham, Wisler Pearlstine, and O'Donoghue

#### 1.    Counts I & II (Text messages incidents)

Counts I and II assert that Hussain shared text messages with Officers Fischer and Schmalbach, and that these text messages were the basis of the harassment charges that each officer filed against Yoast. Yoast alleges that, as applied to him, the charges violated his First Amendment right to free speech and freedom of expression.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."[16] "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."[17] Plaintiff must also show the absence of probable cause for the arrest.[18]

However, because "[t]he right to free speech . . . 'is not absolute,'[19] [l]aws or policies that

---

[13] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[14] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

[15] As an initial matter, Plaintiff concedes that the official capacity claims against the Pottstown Defendants, besides Chief Drumheller, should be dismissed. *See* Doc. No. 98 at 52. Because "claims against government officials in their official capacities are analyzed as municipal liability claims against the municipality that employs them," the official capacity claims against Drumheller will also be dismissed as duplicative of the claims against Pottstown Borough. *Fitzgerald v. Martin*, No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017) (citation omitted).

[16] *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted).

[17] *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citation omitted).

[18] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).

[19] *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).

target conduct, but that burden speech only incidentally, may be valid."[20] Therefore, "speech integral to criminal conduct" is not protected by the First Amendment.[21] Accordingly, the First Amendment does not provide protection when a statute includes the "requirement of a specific intent to harass."[22] Pennsylvania's harassment statute applies when a person has "intent to harass, annoy or alarm another" person.[23] Yoast was charged by Fischer with "engag[ing] in a course of conduct or repeatedly commit[ing] acts which serve no legitimate purpose,"[24] and by Schmalbach with "communicat[ing] repeatedly," both with the "intent to harass, annoy or alarm" Hussain.[25] Therefore, because Yoast was charged not for protected speech "but rather for [repeatedly sending text messages] with the specific intent to harass," his conduct was not protected by the First Amendment as a matter of law.[26]

### 2. Counts III-VIII, XI-XIV (Text message incidents & mail theft incident)

Yoast asserts claims for malicious prosecution under the Fourth and Fourteenth Amendments[27] against numerous defendants. He alleges that Officers Fischer and Schmalbach each acted maliciously when they filed harassment charges against him.[28] Yoast further alleges

---

[20] *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 123–24 (2003)).

[21] *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)); *see also United States v. Gonzalez*, 905 F.3d 165, 191 (3d Cir. 2018) (citing *United States v. Stevens*, 559 U.S. 460, 468 (2010)).

[22] *Waggy*, 936 F.3d at 1020 (citing *Thorne v. Bailey*, 846 F.2d 241, 244 (4th Cir. 1988); *Gormley v. Dir., Conn. State Dep't of Prob.*, 632 F.2d 938, 941–42 (2d Cir. 1980); *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978)).

[23] 18 Pa. Cons. Stat. Ann. § 2709.

[24] *Id.* at (a)(3).

[25] *Id.* at (a)(7).

[26] *Waggy*, 936 F.3d at 1019.

[27] Throughout his Complaint, Yoast asserts claims separately under a specific constitutional provision and under the Fourteenth Amendment. However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010). Therefore, those Fourteenth Amendment claims will be dismissed. Here, because the Fourth Amendment is the proper constitutional provision to analyze a § 1983 claim for malicious prosecution, the Fourteenth Amendment claims will be dismissed. *See Black v. Montgomery Cty.*, 835 F.3d 358, 365 (3d Cir. 2016), *as amended* (Sept. 16, 2016).

[28] Yoast further asserts that Hussain acted under color of state law to maliciously prosecute him.

that Officers Portock and Ponto, as well as Hussain, Legal Aid, Cheetham, Wisler Pearlstine, and O'Donoghue maliciously prosecuted him for harassment based on the allegation that Yoast stole Hussain's mail.[29] Yoast also asserts that each defendant engaged in a conspiracy to maliciously prosecute him.

As an initial matter, "a plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor," and Hussain, Legal Aid, Cheetham, Wisler Pearlstine, and O'Donoghue are not state actors.[30] Yoast argues that private parties who act in concert with state officials can be considered state actors.[31] Providing false information to the police—even deliberately—does not transform a private party into a state actor.[32] "However, providing false information to the police, coupled with a conspiracy to violate constitutional rights, can transform a private actor into a state actor."[33]

To "properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."[34] The Court does "not consider any conclusory allegations [such as] that there was 'a corrupt conspiracy,' 'an agreement,' or 'an

---

[29] Legal Aid and Wisler Pearlstine are only sued in their capacity as the employers of Cheetham and O'Donoghue, respectively.

[30] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.*, 371 F.3d 165, 169–70 (3d Cir. 2004)).

[31] *See id.*

[32] *See, e.g.*, *Boyer v. Mohring*, 994 F. Supp. 2d 649, 658 (E.D. Pa. 2014) (citing *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1352–53 (7th Cir. 1985)); *see also Cooper v. Muldoon*, No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) (citing *Moore*, 754 F.2d at 1352–53; *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1979); *Caswell v. BJ's Wholesale Co.*, 5 F. Supp. 2d 312, 318–19 (E.D. Pa. 1998); *Dirocco v. Anderson*, 655 F. Supp. 594, 598 (E.D. Pa. 1986)); *Gardner v. Bisceglia*, 956 F.2d 1164 (6th Cir. 1992).

[33] *Simmer v. Kehler*, No. 15-2285, 2015 WL 6737017, at *3–4 (D.N.J. Nov. 2, 2015) (citing *Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 68 (3d Cir. 2006)).

[34] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)).

understanding in place between the Defendants."[35] Yoast's conclusory allegations that the defendants were "acting in concert" or "acted in collusion" cannot support his claim.[36]

Moreover, "[t]o prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[37]

Yoast asserts that Officers Fischer and Schmalbach acted maliciously by filing harassment charges for the purpose of stopping him from further communicating with Hussain and not for the purpose of "bringing Plaintiff to justice."[38] Yoast further asserts that Officers Portock and Ponto "institute[d] the summary harassment charge based on animosity, tension and personal vendetta against Plaintiff, reasons extraneous to the proper seeking of justice" and that Portock, Ponto, Hussain, Cheetham, and O'Donoghue maliciously prosecuted him "with evil motive that was intended to outcome a furtherance of criminal proceedings against Plaintiff, seeking compulsion that would force him to exonerate Defendant Hussain from the remainder of her lease term."[39]

Yoast must be able to show that the officers who filed the charges acted for a purpose other than bringing him to justice. But Yoast offers only "unsupported conclusions."[40] Yoast alleges that Officers Fischer and Schmalbach brought charges against him to stop him from

---

[35] *Id.*
[36] Doc. No. 50 at 39.
[37] *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).
[38] Doc. No. 50 at 17, 19, 20, 22.
[39] *Id.* at 39, 43–44.
[40] *Doug Grant*, 232 F.3d at 183–84 (quoting *City of Pittsburgh*, 147 F.3d at 263 n.13).

communicating with Hussain, and that Portock, Ponto, Hussain, Cheetham, and O'Donoghue maliciously prosecuted him to compel him to release Hussain from her lease, but Yoast provides no factual allegations to back up these conclusions.[41]

Moreover, Yoast did not suffer a deprivation of liberty because merely being issued a summons does not constitute a seizure.[42] Yoast asserts that these charges were later used "as an artificial foundation of underpinning to conflate their stalking/harassment charges and allege a course of conduct."[43] Nevertheless, all of these claims resulted in the issuance of a summons; he was not taken into custody. Therefore, Yoast's malicious prosecution claims will be dismissed. Furthermore, in addition to Yoast failing to allege sufficient facts showing the existence of a conspiracy, because Yoast's "substantive § 1983 claims fail . . . [his] § 1983 conspiracy claims fail as well."[44]

### 3. Counts IX & X (Text messages incidents)

Counts IX and X assert that Officer Schmalbach's Affidavit of Probable Cause was fabricated because he misquoted the text message communications between Plaintiff and Hussain regarding the temperature of the water heater in the dwelling unit.[45]

A "criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally

---

[41] *See Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017).

[42] *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005).

[43] Doc. No. 50 at 39, 44; *see also id.* at 17, 19, 21, 22.

[44] *Milbourne v. Baker*, No. 11-1866, 2012 WL 1889148, at *14 (E.D. Pa. May 23, 2012) (citing *Dennison v. Pa. Dep't of Corr.*, 268 F.Supp.2d 387, 402 (M.D. Pa. 2003)); *see also Klein v. Madison*, 374 F. Supp. 3d 389, 421 (E.D. Pa. 2019) (citing *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359–60 (E.D. Pa. 2006); *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.")).

[45] Because a fabrication of evidence claim is properly asserted under the Fourteenth Amendment, Yoast's Fourth Amendment claim will be dismissed. *See Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).

charged."[46] "In addition, there is a notable bar for evidence to be considered 'fabricated.'"[47]

"There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith" and "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."[48]

Officer Schmalbach stated in the Affidavit of Probable Cause that:

On arrival I spoke with Aphrodite Hussain. The texts were being received from her land lord, Terrence Yoast, here in. The texts had started with a request from the temperature on the hot water heater to be turned up. The Defendant did not limit his communications to the topic of the heater however and [] began to call her a horrible mother who doesn't care if she scalds her child with water that is too hot, and other insulting statements.[49]

Yoast asserts that his actual text message stated: "You don't want to scald Sumarine with hot water anyway, you could burn her skin, I think you are being very improvident as a mother, 110 degrees is probably the safest setting on a hot water heater."[50]

Even assuming that this difference could constitute a "fabrication," there is not a reasonable likelihood that Yoast would not have been charged had the text been transcribed verbatim in the criminal complaint. Officer Schmalbach stated that he looked up Yoast and determined that Officer Fischer had already issued Yoast a citation based on his communication with Hussain. Officer Schmalbach also stated that there were numerous text messages besides the specific one that Yoast takes issue with. Yoast was charged with the provision of the harassment statute criminalizing repeated communications.[51] Because Schmalbach filed the

---

[46] *Black*, 835 F.3d at 371.
[47] *Id.*
[48] *Id.* (citing *Halsey*, 750 F.3d at 295).
[49] Exhibit B to Doc. No. 50.
[50] Doc. No. 50 at 15.
[51] Exhibit B to Doc. No. 52.

charge based on the repeated nature of the communication—not Yoast's specific word choice—it is likely that Yoast would still have been charged had this particular text used the word "improvident" instead of "horrible." Moreover, Yoast has failed to allege that Schmalbach acted in bad faith other than by stating it as a conclusion.

### 4. Counts XIX & XX (Washing machine incident)

Yoast alleges that, on February 26, 2017, after Hussain called the police and reported that she was being harassed by him, Officer Martin violated the Fourth Amendment by stopping him as he walked from the parking lot to the basement of the rented home and searching him.[52] However, "under the exception to the warrant requirement established in *Terry v. Ohio*,[53] 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'"[54] Taking the factual allegations as true, based on Hussain's call, Officer Martin had reasonable suspicion to believe that Yoast was harassing Hussain.[55] Therefore, as a matter of law, Officer Martin did not violate the Fourth Amendment by conducting a *Terry* stop.

### 5. Counts XXI & XXII (Washing machine incident)

Yoast alleges that O'Neill, Martin, and Ponto violated the Fourth Amendment by unlawfully entering the basement of the property.[56] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[52] Yoast concedes that the Fourteenth Amendment claim should be dismissed.
[53] 392 U.S. 1 (1968).
[54] *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (quoting *Illinois v. Wardlow*, 528 U.S. 119 (2000)).
[55] *Cf. Navarette v. California*, 572 U.S. 393, 400 (2014) (ruling that an anonymous caller's 911 call describing the car that ran her off the road was reliable because the caller claimed eyewitness testimony of the alleged dangerous driving, independent evidence suggested that she was telling the truth, and her use of the 911 system meant that she could be identified); *see also United States v. Jackson*, 700 F. App'x 411, 415 (6th Cir. 2017).
[56] Because this claim is properly asserted under the Fourth Amendment, Yoast's Fourteenth Amendment claim will be dismissed.

known.'"[57] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"[58] "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[59]

The Supreme Court has "held that when officers attempt to make a warrantless arrest in a public place but the suspect flees into a dwelling the officers do not need a warrant to pursue the suspect and carry out the arrest."[60] Likewise, in *Stanton v. Sims*, the Supreme Court reversed a Ninth Circuit decision denying qualified immunity to a police officer who entered a private property without a warrant to detain a suspect for a misdemeanor.[61] The Supreme Court explained "that federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect."[62] Therefore, the Court held that the police officer "may have been mistaken in believing his actions were justified, but he was not 'plainly incompetent.'"[63]

Here, the police were responding to Hussain's call that she was being harassed by Yoast. They were aware of prior harassment charges filed against Yoast based on his conduct towards Hussain. The police attempted to detain Yoast, but he fled into the home.[64] Even assuming that

---

[57] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[58] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[59] *Pearson*, 555 U.S. at 231 (internal quotation omitted).
[60] *Bodine v. Warwick*, 72 F.3d 393, 399 (3d Cir. 1995) (citing *United States v. Santana*, 427 U.S. 38 (1976)).
[61] 571 U.S. 3, 4 (2013).
[62] *Id.* at 6 (citations omitted).
[63] *Id.* at 10 (quoting *Malley*, 475 U.S. at 341).
[64] *See United States v. Navedo*, 694 F.3d 463, 478 (3d Cir. 2012) (Hardiman, J., dissenting) (quoting *Santana*, 427 U.S. at 42–43 ("'The fact that [a] pursuit . . . end[s] almost as soon as it beg[ins]' because a suspect flees into and is apprehended just inside his own home does not 'render it any the less a 'hot pursuit' sufficient to justify the warrantless entry.'") (alterations in original).

Hussain's consent to enter the home did not provide consent for the police to enter the basement,[65] based on *Stanton*, the officers are entitled to qualified immunity.

### 6. Count XXIII (Washing machine incident)

Yoast also alleges that O'Neill, Martin, and Ponto violated his First Amendment rights because their arrest was retaliation for him calling Hussain a "bitch" and a "bum." However, under the favorable termination rule, "a plaintiff cannot attack the validity of his conviction or sentence in a § 1983 damages action without proving that the conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.'"[66] "The purpose of the favorable termination requirement is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'"[67]

---

[65] "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974)). The Supreme Court limited this rule when there is "a second occupant physically present" who "refus[es] permission to search." *Id.* at 109. However, only someone with "common authority" over the premises can provide consent or object to consent given by another occupant. *Id.* When determining who has "common authority" police officers are entitled to rely on "common understanding." *Id.* at 110–11. Significantly, a landlord "calls up no customary understanding of authority to admit guests without the consent of the current occupant." *Id.* at 112. The police were aware that Hussain was the tenant living in the home, and they obtained Hussain's consent to enter the home. They were also aware that Yoast was the landlord and there is no indication that they knew that the home had areas that Yoast retained authority over. *Cf. United States v. Correa*, 653 F.3d 187, 191 (3d Cir. 2011) (holding that a "resident lacks an objectively reasonable expectation of privacy in the common areas of a multi-unit apartment building with a locked exterior door."). To the contrary, O'Neill explained that his understanding was that Yoast had no authority over the property and that he had "to provide [Hussain] with notice" before he entered the property. Doc. No. 50 at 64.

[66] *Deemer v. Beard*, 557 F. App'x 162, 164–65 (3d Cir. 2014) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). *Heck* applies to convictions for summary offenses. *See Olick v. Pennsylvania*, 739 F. App'x 722, 725 (3d Cir. 2018).

[67] *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (quoting *Heck*, 512 U.S. at 484).

Yoast was convicted of the harassment charge stemming from this arrest,[68] and this conviction has not been reversed or called into question.[69] "[B]oth the conviction and First Amendment retaliation claim are based in part on the alleged" statements Yoast made to Hussain.[70] Therefore, because Yoast's "underlying [harassment] charge and his § 1983 First Amendment claim require answering the same question—whether [Yoast's] behavior constituted protected activity or [harassment]," *Heck* bars this claim.[71]

Moreover, in Officer O'Neill's Affidavit of Probable Cause, he stated that the arrest was because Hussain and an eyewitness informed him about Yoast's pattern of harassment and stalking,[72] Yoast's refusal to provide notice to Hussain before entering the premises, and the police records showing three previous times that Yoast had been cited for harassing Hussain.[73] Therefore, because there was probable cause to arrest Yoast,[74] Yoast's retaliatory arrest claim fails.[75]

---

[68] When there are multiple criminal charges arising from the same act, an acquittal of one charge does not constitute a favorable termination. *See Kossler*, 564 F.3d at 188. Therefore, despite Yoast's acquittal on the stalking charge, because he was found guilty of harassment, the *Heck* bar applies.

[69] Doc. No. 95.

[70] *Ashton v. City of Uniontown*, 459 F. App'x 185, 189 (3d Cir. 2012).

[71] *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005); *see also Ashton*, 459 F. App'x at 189; *Schreane v. Marr*, 722 F. App'x 160, 166 (3d Cir. 2018).

[72] *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)) (explaining that statements from a victim typically suffice to establish probable cause in the absence of contrary evidence); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

[73] Exhibit H to Doc. No. 52. Moreover, because there was probable cause, for this reason as well, Yoast has failed to show that the arrest was retaliatory. *See Nieves*, 139 S. Ct. at 1725.

[74] "[T]the Court can appropriately find probable cause as a matter of law 'if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [the plaintiff's arrest].'" *Gerhart v. Energy Transfer Partners, L.P.*, No. 17-01726, 2018 WL 6589586, at *13 (M.D. Pa. Dec. 14, 2018) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998)); *see also Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014) (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)). ("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.").

[75] *Nieves*, 139 S. Ct. at 1725. Additionally, beyond Yoast's conclusory allegations, there is nothing to suggest that the arrest was actually retaliation for him calling Hussain a "bitch" and a "bum."

### 7. Counts XXIV-XXXI, XXXIII-XXXVI (Washing machine incident)

Yoast further alleges that O'Neill, Martin, and Ponto violated the Fourth and Fourteenth Amendments by arresting him without probable cause. Yoast also alleges that Martin and Ponto failed to intervene when O'Neal falsely arrested him. Yoast further alleges claims against O'Neill for malicious prosecution, fabrication of evidence, and false imprisonment arising from both the harassment and the stalking charges.[76]

However, Yoast cannot challenge whether there was probable cause to arrest him because such a challenge would "necessarily imply the invalidity of" the harassment conviction.[77] For the same reason, Yoast's claims of failure to intervene cannot proceed either because the claims necessarily require Yoast to prove that Officer O'Neill lacked probable cause to arrest him.[78] Similarly, Yoast's fabrication of evidence claim against O'Neill must also be dismissed because "[t]o state a successful § 1983 claim for knowingly falsified evidence, a plaintiff must show a reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged," which "would necessarily imply that [his] conviction was invalid."[79] Likewise, "[c]laims for malicious prosecution or false imprisonment arising from the prosecution, arrest, and imprisonment that led to a plaintiff's conviction are clear examples of *Heck*-barred claims,

---

[76] Because these claims are asserted under the Fourth Amendment, Yoast's Fourteenth Amendment claims will be dismissed.

[77] *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) (citing *Heck*, 512 U.S. at 486–87); *see also Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (explaining that to prevail on a false arrest claim for harassment, a plaintiff must respect "the validity of his extant harassment conviction" and show that the conviction was based on evidence unrelated to the lack of probable cause). Moreover, there was probable cause to arrest Yoast based on Hussain's report of ongoing harassment by Yoast, which was corroborated by an eyewitness. *See Spiker*, 553 F. App'x at 278 (quoting *Myers*, 308 F.3d at 255) ("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."). Therefore, for this reason as well, Yoast has failed to state a claim upon which relief can be granted.

[78] *See Nifas v. Coleman*, 528 F. App'x 132, 136 (3d Cir. 2013) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)) (explaining that a failure to intervene claim requires finding that the underlying violation occurred).

[79] *Ortiz*, 747 F. App'x at 77 (citation omitted).

because success on those claims requires showing unlawful prosecution or imprisonment."[80] Therefore, all of these claims will be dismissed.

### 8. Count XXXII (Washing machine incident)

Yoast asserts an Eighth Amendment excessive bail claim against Defendant O'Neill based on his request that bail be set at $20,000. According to Yoast, O'Neill's "misrepresenting affiances and omission of material facts in his Affidavit . . . was influential and persuasive in the establishment of unreasonable bail."[81]

"[I]n Pennsylvania, the district justice[s], not the police officers, set bail."[82] "Although it is still possible to allege a valid Eighth Amendment excessive bail claim against an individual that lacks authority to set bail, at a minimum the plaintiff must allege that the defendant manipulated the bond decision."[83] Therefore, it is possible to state a claim for excessive bail against a police officer who "manipulate[d]," "help[ed] to shape," or "exercise[d] significant influence over" the bond decision.[84]

However, "[t]o the extent that success on his excessive bond claim . . . would imply the invalidity of his conviction [*Heck*] bars his claim.[85] Yoast's claim is based on his assertion that

---

[80] *Id.* (citation omitted). Specifically, Yoast's malicious prosecution claims fail because "[t]o prevail on a malicious prosecution claim under section 1983, a plaintiff must show that . . . the criminal proceeding ended in the plaintiff's favor." *McKenna*, 582 F.3d at 461 (citing *Smith*, 318 F.3d at 521). Although *Heck* does not always bar false imprisonment claims, when success on the § 1983 claim would "necessarily invalidate a conviction," *Heck* applies. *Wells v. King*, 232 F. App'x 148, 149 (3d Cir. 2007). Because Yoast's imprisonment was based on the same conduct that he was convicted for, if his imprisonment was not lawful then conviction was not either valid. *See Webster v. Wojtowicz*, No. 13-117, 2017 WL 3718163, at *5 (D.N.J. Aug. 29, 2017); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 683 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)) (explaining that to state a claim for false imprisonment a plaintiff must establish that "the detention was unlawful"). Therefore, *Heck* bars this claim. *See Curry v. Yachera*, No. 14-5253, 2015 WL 1186014, at *3 (E.D. Pa. Mar. 13, 2015), *aff'd as modified*, 835 F.3d 373 (3d Cir. 2016) ("The plaintiff's false arrest and false imprisonment claims address the validity of the conviction itself-not the level of force used in his arrest or the conditions of his imprisonment.").
[81] Doc. No. 50 at 91.
[82] *James v. York Cty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005) (citing Pa. R. Crim. P. 120).
[83] *Quiero v. Muniz*, No. 14-00225, 2015 WL 13738994, at *6 (M.D. Pa. Aug. 3, 2015) (citing *James*, 160 F. App'x at 133).
[84] *James*, 160 F. App'x at 133.
[85] *Id.* at 133 n.5.

O'Neill falsified the Affidavit of Probable Cause which caused the bail amount to be artificially increased. Success on this claim would imply that O'Neill lacked probable cause to arrest Yoast, which would imply that Yoast's conviction—which was based on the same alleged conduct—was invalid. Therefore, this claim will be dismissed.

### 9. Count XXXVII (Car kicking incident)

Yoast asserts a Fourteenth Amendment claim for a state-created danger against Officer Casio. According to Yoast, on March 2, 2017, he told Casio that he needed to visit the property and was worried that Hussain "would be problematic with his visitation, that she is provocative and can be untruthful" and asked for police protection, but that Casio, despite knowing about the four prior incidents with Hussain, "directed Plaintiff to visit his property absent any attending officer and affirmatively stated that Plaintiff would not be arrested."[86] However, after Yoast visited the property and took photos, Officer Portock placed him "under arrest for kicking Defendant Hussain's vehicle bumper and subsequently charged him for stalking and harassment."[87]

To establish a state-created danger claim, Yoast must plead four elements:

(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[88]

---

[86] Doc. No. 50 at 101.
[87] *Id.* at 102.
[88] *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013) (citations omitted).

The first element ensures that "[s]tate actors are not liable every time their actions set into motion a chain of events that result in harm."[89] To satisfy the "fairly direct" prong, the plaintiff must plausibly allege that state officials' actions caused to happen or were the catalyst for the harm asserted.[90] "The plaintiff fails to satisfy this prong if the '[d]efendants' actions were separated from the ultimate harm by a lengthy period of time and intervening forces and actions.'"[91] "Thus, it is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm."[92]

Yoast fails to sufficiently plead facts to establish that his arrest was the "fairly direct" result of Casio's actions. As Yoast explains, Officer Portock's Affidavit of Probable Cause stated that he was dispatched because the police "were getting reports from a neighbor that a white male subject was on the property kicking a vehicle and cursing."[93] Officer Cortis then informed Portock that two witnesses had seen Yoast kicking Hussain's car, screaming obscenities, and angrily rummaging through the garbage cans.[94] As a matter of law, these witness reports constitute an intervening force that separated Casio's statement from Yoast's arrest. Therefore, Yoast has failed to sufficiently plead the first element.

### 10. Counts XXXVIII-XLI (Car kicking incident)

Following the alleged false statements by the witnesses and Hussain, Yoast alleges that Officers Portock and Hart falsely arrested him because they lacked probable cause. Yoast also

---

[89] *Id.* at 283.
[90] *Quinn v. Badolato*, 709 F. App'x 126, 129 (3d Cir. 2017) (quoting *Henry*, 728 F.3d at 285).
[91] *Quinn*, 709 F. App'x 129 (quoting *Henry*, 728 F.3d at 285).
[92] *Henry*, 728 F.3d at 285.
[93] Exhibit I to Doc. No. 50.
[94] *See id.*

alleges claims of malicious prosecution against Portock and Cortis.[95] As a result of the March 2 events, Yoast was charged with both stalking and harassment, and was convicted of harassment.

Although Yoast was not convicted of the stalking charge, when there are multiple criminal charges arising from the same act, an acquittal on one charge does not constitute a favorable termination.[96] Because stating a successful claim for false arrest or malicious prosecution would require Yoast to show that the witnesses lied, such a claim would "would necessarily imply that [his harassment] conviction was invalid."[97] Therefore, these claims are *Heck*-barred.[98]

## 11. Counts XLII & XLIII (Car kicking incident)

Yoast asserts an Eighth Amendment excessive bail claim, and a civil conspiracy to impose excessive bail, against Officer Portock, Sergeant Ponto, Corporal O'Neill, Officer Pfister, and Chief Drumheller. Yoast alleges that after discussions with Ponto, O'Neill, and Drumheller, Portock submitted a request for $1 million bail, which Pfister argued for, and that this request was based on "Portock's misrepresenting affiances and omission of material facts in his Affidavit."[99] Furthermore, Yoast avers that this request was "influential and persuasive" to the Magisterial District Justice's decision to set bail at the allegedly excessive amount of $99,000.[100]

As explained above, it is possible to state a claim for excessive bail against a police officer who "manipulate[d]," "help[ed] to shape," or "exercise[d] significant influence over" the

---

[95] Because these claims are properly brought under the Fourth Amendment, the Fourteenth Amendment claims will be dismissed. Regardless, as will be explained, there is no merit to these claims.

[96] *See Kossler*, 564 F.3d at 188.

[97] *Ortiz*, 747 F. App'x at 77 (citation omitted). The conviction was based on the same conduct that the basis for the arrest and prosecution.

[98] Moreover, Yoast's conviction for harassment confirms that the arresting officers had probable cause to arrest him. *See Noviho v. Lancaster Cty. Pennsylvania*, No. 15-3151, 2016 WL 8716672, at *4 (E.D. Pa. June 3, 2016), *aff'd sub nom. Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160 (3d Cir. 2017).

[99] Doc. No. 50 at 121.

[100] *Id.* at 122.

bond decision.[101] However, Yoast has failed to state such a claim because success on these claims would imply that the witness statements about Yoast's conduct at the property were false, which would, in turn, necessarily imply that Yoast's conviction for harassment was invalid. Therefore, *Heck* bars these claims.[102]

### 12. Counts XLIV-LI (Car kicking incident)

Yoast also alleges claims against Officer Pfister for failure to intervene in a false imprisonment, against Officers Portock, Hart, and Long for false imprisonment, and against Portock and Ponto for malicious prosecution and conspiracy to commit malicious prosecution.[103] These claims will all be dismissed.

Yoast's claims of false imprisonment[104] and malicious prosecution[105] require him to show that there was no probable cause. Failure to intervene[106] and civil conspiracy[107] require a plaintiff to prove the underlying constitutional tort. Therefore, *Heck* bars all of these claims because success on the merits would imply the invalidity of the harassment conviction.

### 13. Counts LII-LV (All incidents involving the police)

Yoast asserts claims for failure-to-train against Sergeant Ponto and Chief Drumheller alleging that Ponto failed to adequately train Portock, and that Drumheller failed to train all of the police officers named in the Complaint.[108] However, a failure to train claim is properly

---

[101] *James*, 160 F. App'x at 133.
[102] *Id.* at 133 n.5.
[103] The Fourteenth Amendment claims will be dismissed because these claims are properly brought under the Fourth Amendment.
[104] Yoast's false imprisonment claim is based on his assertion that he was arrested without probable cause. *See James*, 700 F.3d at 683 (citing *Wallace*, 549 U.S. at 389).
[105] *McKenna*, 582 F.3d at 461 (citing *Smith*, 318 F.3d at 521).
[106] *Nifas*, 528 F. App'x at 136 (citing *Smith*, 293 F.3d at 650).
[107] *Rink*, 717 F. App'x at 141.
[108] Because the Fourteenth Amendment is the proper basis for these claims, the corresponding Fourth and Eighth Amendment claims will be dismissed.

brought against a municipality.[109] Although "a single act or decision of a final policymaker can establish municipal policy,"[110] the Third Circuit has held that "as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker"[111] and that "the Supreme Court has forbidden courts from 'assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'"[112] Therefore, the failure-to-train claims against Sergeant Ponto and Chief Drumheller will be dismissed.

To the extent that Yoast's Amended Complaint can be construed as asserting claims based on supervisory liability, and to the extent that supervisory liability is a viable claim,[113] the claims also fail. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[114] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[115]

Moreover, "[i]n order to state a § 1983 claim against a supervisor for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into

---

[109] *City of Canton, Ohio*, 489 U.S. 378, 388 (1989).

[110] *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir. 2004) (citation omitted).

[111] *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citations omitted). This principle has been applied to Borough Police Chiefs as well. *See Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 (M.D. Pa.), *aff'd*, 548 F. App'x 813 (3d Cir. 2013).

[112] *Santiago*, 629 F.3d at 135 n.11 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 n.1, 126 (1988)).

[113] *See Williams v. Papi*, 714 F. App'x 128, 133 (3d Cir. 2017).

[114] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).

[115] *Rode*, 845 F.2d at 1207; *see also Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Scheing v. Fountain*, 729 F. App'x 175, 178 n.13 (3d Cir. 2018) (explaining that "dismissal is warranted at the pleading stage absent an adequate showing of personal involvement").

contact.'"[116] "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[117]

Yoast has only asserted conclusory allegations that Ponto and Drumheller had knowledge of, and acquiesced to, the specific actions of their subordinates at issue. Yoast has not alleged any pattern of constitutional violations. He also does not allege sufficient facts to establish that Ponto or Drumheller acted with deliberate indifference or were personally involved in the alleged violations of his rights.[118] Therefore, Yoast has failed to state a claim upon which relief can be granted.

### 14. Counts LVI-LVII, LXII-LXIII (All incidents involving the police)

Yoast appears to assert *Monell* claims against Drumheller and against Pottstown Borough based on both defendants' failure "to adopt necessary internal operating policies" regarding making the probable cause determination, understanding when an application for arrest warrant is necessary, and when the police should be involved in non-criminal landlord-tenant issues.[119]

As explained above, Yoast has failed to state a claim for supervisory liability against Drumheller because there are no allegations of personal involvement or deliberate indifference. Therefore, the claims against him will be dismissed.

---

[116] *Doneker v. Cty. of Bucks*, No. 13-1534, 2014 WL 2586968, at *7 (E.D. Pa. June 10, 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[117] *Connick*, 563 U.S. at 62 (citation omitted).

[118] Additionally, supervisory liability is only applicable when the plaintiff has stated a triable claim against the subordinate. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) ("Having determined that Parkell presents a triable Fourth Amendment claim, we next consider whether Parkell may pursue money damages from the State Defendants, who did not themselves conduct the visual body-cavity searches but may have had supervisory involvement."); *Gordon v. Morton*, 131 F. App'x 797, 799 (3d Cir. 2005) (citing *A.M. ex rel. J.M.K. v. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) ("Additionally, because Gordon fails to demonstrate he suffered a constitutional violation, he cannot satisfy any theory of supervisory liability."). Besides the Fourth Amendment claim based on the entry into the basement, the Court has determined that, as a matter of law, none of the subordinate police officers violated Yoast's constitutional rights. Therefore, supervisory liability is not available based on those claims. Moreover, for the February 26 and March 2 incidents, *Heck* bars this claim because it would imply the invalidity of the convictions.

[119] Doc. No. 50 at 147, 160.

With regard to Pottstown, an entity can be liable when a "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[120] However, because as explained above, Drumheller was not the final policymaker, Yoast has "failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged."[121] Nor has Yoast pleaded any facts indicating an existing practice likely to violate constitutional rights.[122] Therefore, Yoast has failed to state a claim upon which relief can be granted.

### 15. Counts LVIII & LIX (Car kicking incident & washing machine incident)

Yoast asserts claims for municipal liability against Pottstown Borough alleging that "Pottstown Borough, has a custom and de facto practice of seizing individuals for committing misdemeanor offenses outside of the arresting officer's presence, through the invocation of police powers by their officers, without prefatorily applying for an arrest warrant or having probable cause prior to taking the accused person into custody."[123]

"A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom."[124] "Liability is imposed 'when the policy or custom itself violates the Constitution or when the policy or

---

[120] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citations omitted).

[121] *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014). Because claims for municipal liability are properly brought under the Fourteenth Amendment, all of Yoast's Fourth and Eighth Amendment *Monell* claims will be dismissed.

[122] Additionally, because the Court holds that, for all but one incident, the police officers did not violate any of Yoast's constitutional rights, there is no indication that there was an inadequate existing practice or that the need to control the police officers was obvious.

[123] Doc. No. 50 at 151.

[124] *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees.'"[125] A custom "is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'"[126]

Yoast has failed to sufficiently plead the existence of a municipal custom because his Amended Complaint does not demonstrate "a given course of conduct."[127] Yoast only asserts actions against him; the extent of an alleged custom is his assertion that "[u]pon information and belief, Plaintiff avers that this warrantless approach is so widespread and longstanding that Pottstown Borough, as a municipality, is cognizant of this procedural defectiveness in their enforcement of the Criminal Code and willfully maintains this unscrupulous practice without correction."[128] However, because Yoast fails to set forth any factual allegations to substantiate the alleged custom,[129] the "allegations amount to mere conclusory statements and a recitation of the elements required to bring forth a *Monell* claim, and are thus insufficient."[130]

Moreover, the basis for these claims are the arrests that Yoast asserts violated his constitutional rights. However, because Yoast was convicted of a harassment charge stemming from each arrest, *Heck* bars these *Monell* claims.[131]

---

[125] *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

[126] *Natale*, 318 F.3d at 584 (quoting *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

[127] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[128] Doc. No. 50 at 151.

[129] *Estate of Roman*, 914 F.3d at 798 (demonstrating custom through newspaper articles, a consent decree, and press releases).

[130] *Saleem v. Sch. Dist. of Philadelphia*, No. 12-3193, 2013 WL 5763206, at *2 (E.D. Pa. Oct. 24, 2013). The Court also notes that even if there were a custom, the custom does not violate the Constitution. *See Huff*, 2015 WL 4041963, at *8; *see also Graves v. Mahoning Cty.*, 821 F.3d 772, 778 (6th Cir. 2016) (quoting *United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir. 1996)) ("The 'requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest,' we have explained, 'is not mandated by the Fourth Amendment.'"); *Hartz v. Campbell*, 680 F. App'x 703, 707 (10th Cir. 2017) ("Indeed, it is widely recognized that the Fourth Amendment does not impose an in-presence requirement."); Wayne R. LaFave, 3 Search & Seizure § 5.1(c) (5th ed.) ("[T]he presence test is not mandated by the Fourth Amendment").

[131] *See Munchinski v. Solomon*, No. 06-4093, 2007 WL 3121331, at *2 (3d Cir. Oct. 26, 2007); *Ash v. Twp. of Willingboro*, No. 10-1900, 2012 WL 6623986, at *4 (D.N.J. Dec. 18, 2012).

## 16. Counts LX & LXI (All incidents involving the police)

Yoast also asserts claims for municipal liability against Pottstown Borough based on a failure to train. Yoast alleges that the Borough has been hiring police officers but failing to train them "when it comes to following areas":

> a) Perfecting an arrest warrant prior to conducting an arrest when the accused individual has been alleged to have committed a misdemeanor crime outside of the arresting officer's presence. b) Abstention from the entry into a building structure when the owner unequivocally apprises the officer not to enter. c) Proficiency in the United States Constitution, including its protection of rights. d) Basic fundamentals of the Criminal Code and interpretation of its counterparts. e) Intelligible and proper enforcement of the Criminal Code after achieving its plain language meaning and spiritual intent. f) Resolution of tenant complaints without becoming manipulated or subservient to that complaining tenant, in a manner that does presume compulsory invocation of the Criminal Code because the complaining tenant is unsatisfied and when there has been no actual crime committed. g) Assessing and establishing reasonable bail request amounts for pretrial detainees, commensurate to factors such as, seriousness of the alleged crime, criminal history of the accused, flight risk, danger to the community etc.[132]

When municipal liability is based on a failure to train, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."[133] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[134]

However, even assuming that Yoast's rights were violated, he has failed to plead factual allegations demonstrating that the Borough failed to train its officers in the manner alleged by Yoast. "[H]e does not identify any facts detailing specific deficiencies in any training programs."[135] Yoast "has also failed to allege any facts showing that a [Pottstown Borough]

---

[132] Doc. No. 50 at 154–55.
[133] *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).
[134] *Id.* at 224 (quoting *Brown*, 520 U.S. at 410).
[135] *Niblack v. Murray*, No. 12-6910, 2013 WL 4432081, at *9 (D.N.J. Aug. 14, 2013).

policymaker knew or should have known that the [Borough's] current training policies would" lead to a violation of Yoast's rights.[136] As the Third Circuit has explained, it is proper to dismiss a *Monell* claim when the "complaint [makes] conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations."[137]

### B. Section 1983 Claims Against Hussain, Singh, Hallinger, and Leon Smith

The Amended Complaint contains thirty one § 1983 counts against Hussain[138] and ten each against Singh,[139] Hallinger, and Leon Smith.[140] These § 1983 counts are all claims brought against various Pottstown police officers, which also name Hussain, Singh, Hallinger, and/or Leon Smith asserting that they are subject to liability under § 1983 because they acted in concert with state actors. Hussain and Singh waived service,[141] and both Hallinger and Leon Smith were properly served.[142] None of these defendants have answered the Amended Complaint or filed motions to dismiss.

"Generally, a district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond."[143] Each of the § 1983 claims against the Pottstown Defendants was extensively briefed and, as explained above, the Court has determined that Yoast has failed to state any § 1983 claims upon which relief can

---

[136] *Fitzgerald*, 2017 WL 3310676, at *19.
[137] *Wood*, 568 F. App'x at 104.
[138] Counts I-VII, XI-XIV, XXIII-XV, XXX-XXXI, XXXIII-XXXVI, XXXVIII-XLI, XLVI-LI.
[139] Counts XXIII-XXV, XXX-XXXI, XXX-XVI.
[140] Counts XXXVIII-XLI, XLVI-XI are alleged against both Hallinger and Leon Smith.
[141] Doc. No. 39.
[142] Doc. No. 38.
[143] *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990)); *Germany v. Power 105.1 Radio*, No. 18-3121, 2019 WL 5578847, at *1 n.1 (3d Cir. Oct. 29, 2019) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d Cir. 2002)).

be granted. Therefore, because Yoast had an opportunity to respond, the Court dismisses those § 1983 claims as alleged against Hussain, Singh, Hallinger, and/or Leon Smith.[144]

### C. Claims Against District Attorney Steele

Yoast asserts four counts against District Attorney Steele, in both his individual and official capacity, alleging malicious prosecution based on a failure to adequately train and supervise, and a failure to adopt a policy.[145] According to Yoast, the assistant district attorney who filed the Information against him acted maliciously in doing so, and Steele failed to adequately train his subordinates, or adopt a policy, not to prosecute people maliciously.

However, the Supreme Court has held that prosecutors enjoy absolute immunity from actions for malicious prosecution.[146] The Supreme Court has further held that this absolute immunity generally extends to claims based on the failure to train subordinate prosecutors, the failure to properly supervise subordinate prosecutors, and the failure to adopt proper policies.[147] Absolute immunity only does not apply when the challenged conduct is based on purely

---

[144] The Court also notes that, as with the §1983 claims against Legal Aid, Cheetham, Wisler Pearlstine, and O'Donoghue, Yoast has failed to allege anything more than conclusory statements alleging that Hussain, Singh, Hallinger, and/or Leon Smith were engaged in an unconstitutional conspiracy with the police to violate his constitutional rights. *See Great W. Mining*, 615 F.3d at 178 (citing *D.R.*, 972 F.2d at 1377). The extent of Yoast's allegations are boilerplate sentences pasted into the various §1983 counts he alleges such as "Plaintiff avers that Defendant Fischer, Defendant Schmalbach and the alleged victim, Defendant Hussain, assembled and jointly conspired to deprive Plaintiff of his Fourth Amendment right to be free from prosecutorial malice"; "Defendant, Aphrodite Hussain and Defendant, Manjeet Singh, inter alios, were private-sector-parties who acted in concert with Defendants', Corporal O'neill, Sergeant Ponto and Officer Martin, under the color of state law . . . "; and "Plaintiff avers that Defendants', Sergeant Ponto, Officer Portock, Aphrodite Hussain, Catherine Hallinger and Leon Smith, assembled to jointly conspire and deprive Plaintiff of his Fourteenth Amendment procedural due process right to be free from prosecutorial malice." *See generally* Doc. No. 50. However, "[u]nder *Iqbal*" the Court does "not consider any conclusory allegations [such as] that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between'" the defendants. *Great W. Mining*, 615 F.3d at 178 (citing *D.R.*, 972 F.2d at 1377).

[145] Counts LXXXVII & LXXXVII. Three of the counts are separately labeled LXXXVII.

[146] *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976).

[147] *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (holding that a District Attorney is immune from §1983 claims alleging a failure properly to train prosecutors, a failure properly to supervise prosecutors, and a failure to establish an information system containing potential impeachment material about informants); *see also id.* at 349 ("[W]e conclude that petitioners are entitled to absolute immunity in respect to Goldstein's claims that their supervision, training, or information-system management were constitutionally inadequate.").

"administrative rather than judicial considerations of the prosecutor."[148] "Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel."[149] Therefore, the claims against Steele, in his individual capacity, will be dismissed.

The claims against Steele in his official capacity are actually against Montgomery County.[150] These claims will be dismissed for two reasons. First, because, as explained above, there was probable cause to prosecute him,[151] Yoast's constitutional rights were not violated.[152] Second, as also explained above, to succeed on a suit alleging municipal liability, Yoast must demonstrate a policy or custom that lead to a violation of his rights.[153] However, Yoast has failed to set forth any factual allegations to substantiate the alleged custom.[154] Therefore, these claims will be dismissed as well.

### D. State Law Claims Against the Pottstown Defendants, Legal Aid, and Wisler Pearlstine

Yoast also alleges state law claims against various of the Pottstown Defendants,[155] Legal Aid,[156] and Wisler Pearlstine[157] related to the § 1983 claims against those defendants.[158]

---

[148] *Santos v. New Jersey*, 393 F. App'x 893, 894 (3d Cir. 2010).
[149] *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836–37 (3d Cir. 2009).
[150] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).
[151] *Hyatt*, 340 F. App'x at 838.
[152] *See Bergdoll v. City of York*, 515 F. App'x 165, 172 (3d Cir. 2013).
[153] *See Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 691).
[154] Yoast only alleges, in conclusory fashion, that Steele "has established an unconstitutional local custom of maliciously prosecuting charges against Defendants who have been accused of committing crimes and for the sole purpose of patronizing the local police departments stationed throughout Montgomery County," Doc. No. 50 at 190; *see also Estate of Roman*, 914 F.3d at 798 (demonstrating custom through newspaper articles, a consent decree, and press releases). Moreover, with regard to Yoast's failure to adopt a policy claim, he has failed to plead sufficient facts to show that "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584.
[155] Counts XXIV, XXXIII, XXXVIII, XLIII, XLVI, XCIII.
[156] Counts XVII & XVIII.
[157] Counts XV & XVI.
[158] In Count XCIII, Yoast asserts a claim for Intentional Infliction of Emotional Distress against all of the Pottstown Defendants, Hussain, Hallinger, and Leon Smith.

However, "[f]ederal courts are courts of limited jurisdiction"[159] and "[u]nder 28 U.S.C. § 1367, 'a prerequisite to the federal court's exercise of pendent jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court.'"[160] "It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'"[161] As no federal claims remain against these Defendants, and there are no remaining claims that "derive from a common nucleus of operative fact," the pendent state law claims will be dismissed.[162]

### E.  Pennsylvania Drug Nuisance Law & Negligence Per Se Claims

Yoast asserts a claim under the Pennsylvania Drug Nuisance Law[163] against Edward Forbes, Jeanne Forbes, Adrian Smith, Leon Smith, and Hallinger,[164] and a negligence per se claim against the Forbeses,[165] alleging that they have taken actions that reduce his property value. As all the claims relating to the events at the house in Pottstown have been dismissed, the Court will not exercise supplemental jurisdiction over these claims, which in any case are

---

[159] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).
[160] *Fleming v. Warren*, No. 19-2926, 2019 WL 5086962, at *6 (E.D. Pa. Oct. 10, 2019) (citing *Polite v. Rendell*, No. 08-5329, 2010 WL 1254334, at *4 (E.D. Pa. Apr. 1, 2010)).
[161] *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (codified by 28 U.S.C. § 1367(c)(3) (2004)); *see also Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013); *Rendell*, 2010 WL 1254334, at *4 (quoting 28 U.S.C. § 1367(c)(3)) ("When 'the district court has dismissed all claims over which it has original jurisdiction,' the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims.").
[162] *Gibbs*, 383 U.S. at 725; *see also Kis v. Cty. of Schuylkill,* 866 F. Supp. 1462, 1480 (E.D. Pa. 1994); *La Plant v. Frazier,* 564 F. Supp. 1095, 1098 (E.D. Pa. 1983) (citing *Aldinger v. Howard*, 427 U.S. 1 (1976) (declining to exercise jurisdiction over state law claims against defendants who no longer had federal claims even though there were still federal claims against another defendant); *Lopuszanski v. Fabey*, 560 F. Supp. 3, 5 (E.D. Pa. 1982) (same). Moreover, retaining jurisdiction "would not be in the interest of judicial economy and fairness to the litigants." *Kis,* 866 F. Supp. at 1480.
[163] 42 Pa.C.S.A. § 8381, *et seq.*
[164] Count XCI.
[165] Count XCII.

"totally unrelated to a cause of action under federal law."[166] These claims will be dismissed without prejudice to assertion in the appropriate state court.

## F. Claims Related to the Denial of Medical Care

Yoast asserts claims against Doe,[167] Hoch,[168] VanDorick,[169] and Stein[170] based on the failure to provide him with a CPAP machine,[171] and against Montgomery County[172] and PrimeCare Medical[173] based on municipal liability.

"Section 1983, enacted as part of the Civil Rights Act of 1871, establishes a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights."[174] The Constitution requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[175] Therefore, the Supreme Court has established that prison officials violate the Constitution by "intentionally denying or delaying access to medical care."[176] To state a claim, Plaintiff must allege that he had a serious medical and that the Defendants acted with deliberate indifference to his health or safety.[177]

---

[166] *Lyon*, 45 F.3d at 761. Yoast retains the ability to file suit in state court.

[167] Counts LXIV & LXVI.

[168] Counts LXVII (Yoast labels multiple counts as LXVII).

[169] Counts LXX & LXXII.

[170] Counts LXXIII & LXXV.

[171] Yoast also asserts claims against these defendants in their official capacities. However, as explained above, because "claims against government officials in their official capacities are analyzed as municipal liability claims against the municipality that employs them," these claims will be dismissed as duplicative of the claims against Montgomery County and PrimeCare. *Fitzgerald*, 2017 WL 3310676, at *6 (citation omitted).

[172] Counts LXXVI-LXXXIV.

[173] Counts LXVII (Yoast labels multiple counts as LXVII).

[174] *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (citations omitted). None of the defendants dispute that they were acting under color of state law. Therefore, the Court's inquiry is limited to determining whether Yoast was deprived of a constitutional right.

[175] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

[176] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

[177] Typically, denial of medical care claims are asserted under the Eighth Amendment's prohibition on cruel and unusual punishment. *See id.* at 534. However, because Yoast was a pretrial detainee, his "claim should be evaluated under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment." *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (citing *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir.

"A medical need is 'serious,' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[178] At least one other district court in this Circuit has held that sleep apnea is a serious medical condition,[179] although the Third Circuit has not ruled on whether "sleep apnea constitutes a serious medical need."[180]

Yoast asserts that he was diagnosed with sleep apnea and that the failure to provide him with a CPAP machine caused "sufferance to Plaintiff, suffocation and substantial deficiency in the adequacy of his breathing when he slept."[181] Therefore, at this stage, the Court will assume that Yoast had a serious medical need.

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law."[182] To act with deliberate indifference is to "recklessly disregard a substantial risk of serious harm."[183] "[F]inding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official 'knows of and disregards an

2005)). Nevertheless, because "the Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner," *Natale*, 318 F.3d at 581 (citation and internal quotation omitted), the Court will evaluate Yoast's § 1983 claims "under the same standard used to evaluate similar claims brought under the Eighth Amendment." *Moore v. Luffey*, 767 F. App'x 335, 340 (citing *Natale*, 318 F.3d at 581-82); *see also Edwards*, 663 F. App'x at 135. Moreover, because the parties have argued the motions pursuant to the deliberate indifference standard, "the Court applies that standard for the purposes of these motions." *McFadden v. Dalmasi*, No. 17-5787, 2019 WL 6218220, at *6 (E.D. Pa. Nov. 21, 2019) (appeal filed *McFadden v. Dalmasi*, No. 19-3823 (3d. Cir. 2019)). Additionally, because the Court applies the Eighth Amendment standard, all of the duplicative counts will be dismissed.

[178] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

[179] *Perry v. Ebbert*, No. 18-870, 2019 WL 1424618, at *10 (M.D. Pa. Mar. 29, 2019).

[180] *Baker v. Younkin*, 529 F. App'x 114, 116 (3d Cir. 2013).

[181] Doc. No. 50 at 168. The Supreme Court has explained that a plaintiff's allegation of harm must "liberally construed." *Erickson v. Pardus*, 551 U.S. at 93, 94 (2007).

[182] *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

[183] *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)).

excessive risk to inmate health or safety.'"[184] The Court will assess the claims as to each Defendant.

### 1. Hoch

Yoast asserts that during a "perfunctory and general consultation with Defendant Hoch, who was acting in the capacity of a certified medical assistant," Hoch "was apprised that Plaintiff suffered from sleep apnea and it was requested that he provide Plaintiff with a [CPAP] machine to aid his medical condition."[185] After Hoch asked Yoast whether a family member could bring him a CPAP machine, Hoch told Yoast that he would check if the prison had an available CPAP machine. However, Yoast alleges that that Hoch "did not attempt to secure a machine for him or have any other prison official render medical aid on his behalf."[186]

Hoch argues that, at most, he was negligent in failing to secure a CPAP machine because Yoast did "not allege he suffered any adverse affects of not utilizing the machine" and he "may have simply believed Plaintiff was going to have his personal machine brought to the facility."[187] However, Yoast alleges that he suffocated and was unable to breathe as a result of not having the CPAP machine. Moreover, Hoch only asked if a family member or friend would be able to bring a CPAP machine, "if necessary."[188] Yoast asserts, though, that Hoch assured him that he would check with the prison if they had a CPAP machine, but that Hoch did not do so. Therefore, at this preliminary stage, Yoast has stated sufficient facts to show that Hoch knew of an excessive risk to health or safety, but disregarded the risk.

---

[184] *Natale*, 318 F.3d at 582 (quoting *Farmer*, 511 U.S. at 837); *see also Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 149 (3d Cir. 2013). The Court notes that none of the individual defendants raised the defense of qualified immunity.
[185] Doc. No. 50 at 166.
[186] *Id.*
[187] Doc. No. 60-1 at 7.
[188] Doc. No. 50 at 164.

### 2. VanDorick and Stein

Plaintiff alleges that VanDorick and Stein knew that he had sleep apnea and that he requested a CPAP machine, but he does not allege that he told them that the lack of the machine caused any problems other than that he was snoring loudly, which "was disturbing the other inmates at night and causing them to be restless."[189] Yoast alleges that both VanDorick and Stein dismissed his request. Yoast also alleges that Stein, at least, knew that Yoast had been seen by medical personnel, who were in a position to determine the necessity of the treatment. Given these allegations, Plaintiff has failed to state a claim that VanDorick and Stein had actual knowledge or a reason to believe that Yoast had serious medical needs that were not being treated by medical personnel.[190]

### 3. Montgomery County

Yoast alleges three separate *Monell* claims against Montgomery County. First, he alleges that "Montgomery County PA, has a custom or practice of thwarting the legitimate medical needs of every pretrial detainee, or convicted inmate, who is incarcerated in the Montgomery County Correctional Facility, who suffers from sleep apnea, by failure to equip inmates with [CPAP] machines and flagrantly ignoring requests to render medical aid."[191] Second, he alleges that Montgomery County has failed to provide "adequate training of their new and existing prison guards, to constitutionally address the medical necessities of the prisoners who have been diagnosed with sleep apnea and are entitled to the rendition of medical aid."[192] Third, he alleges that Montgomery County "has failed to adopt the necessary internal operating policies that

---

[189] Doc. No. 50 at 170.
[190] *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170–71 (3d Cir. 2015) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).
[191] Doc. No. 50 at 172–73.
[192] *Id.* at 176.

memorialize the guidance and procedure to be implemented by their employees" when a prisoner has diagnosed sleep apnea.[193]

### a. Unconstitutional Custom

"Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[194] However, "[a]lthough a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."[195] A showing of causation, based on a custom, requires a plaintiff to show "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."[196]

Yoast argues that during his eleven days of confinement he was denied a CPAP machine three separate times, and also asserts that he witnessed another inmate who had sleep apnea but was denied a CPAP machine.[197] However, beyond conclusory allegations that MCCF consistently refused to provide CPAP machines to pretrial detainees, Yoast has not alleged that any policymakers were aware of similar conduct.[198] Therefore, this claim will be dismissed.

### b. Failure to train

As explained above, when municipal liability is based on a failure to train, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."[199] "'[D]eliberate

---

[193] *Id.* at 179.
[194] *Estate of Roman*, 914 F.3d at 798 (quoting *Bielevicz*, 915 F.2d at 850).
[195] *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).
[196] *Bielevicz*, 915 F.2d at 850.
[197] Doc. No. 90 at 6–7.
[198] *See Saleem*, 2013 WL 5763206, at *2.
[199] *Thomas*, 749 F.3d at 222 (quoting *Carter*, 181 F.3d at 357).

indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[200]

However, Yoast has not "identif[ied] any facts detailing specific deficiencies in any training programs."[201] Rather, he has merely stated a conclusory allegation that MCCF failed to train prison guards properly. Moreover, Yoast "has also failed to allege any facts showing that a [MCCF] policymaker knew or should have known that the [MCCF's] current training policies would" lead to a violation of Yoast's rights.[202] Therefore because Yoast "made conclusory and general claims of failure to . . . train," this claim will be dismissed.[203]

### c. Failure to adopt policies

As explained above, an entity can be liable when a "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[204] "Such failures to act, however, 'can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.'"[205]

However, beyond conclusory allegations, Yoast has failed to sufficiently allege a pattern of violations that would have made the need to take action obvious. Moreover, he has also

---

[200] *Id.* at 224 (quoting *Brown*, 520 U.S. at 410).
[201] *Niblack*, 2013 WL 4432081, at *9.
[202] *Fitzgerald*, 2017 WL 3310676, at *19; *see also Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 198 (3d Cir. 2018) ("Nor did Hope allege that her injuries were caused by affirmative actions on the part of a particular policymaker.").
[203] *Wood*, 568 F. App'x at 104.
[204] *Natale*, 318 F.3d at 584 (3d Cir. 2003) (citations omitted).
[205] *Marvel v. Delaware Cty.*, No. 07-5054, 2009 WL 1544928, at *21 (E.D. Pa. June 2, 2009), *aff'd sub nom. Marvel v. Cty. of Delaware*, 397 F. App'x 785 (3d Cir. 2010) (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000))

"failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged."[206] Therefore, this claim will also be dismissed.

### 4. PrimeCare

Liberally construing Yoast's Complaint, he alleges a failure-to-adopt a policy claim against PrimeCare based on a single-incident theory.[207] Although, as explained above, generally a plaintiff must plead a pattern of violations, "[t]o find deliberate indifference from a single-incident violation, the risk of [Yoast's] injury must be a 'highly predictable consequence' of [PrimeCare's] failure to" adopt a policy.[208] The "burden on the plaintiff in such a case is high."[209]

Yoast's claim fails because his allegation that PrimeCare does not have a policy "to address the medical needs of inmates with serious medical conditions" is a conclusory allegation which the Court does not credit.[210] Moreover, to the extent that Yoast alleges that PrimeCare failed to adopt a policy specifically requiring that CPAP machines be provided to all prisoners with sleep apnea, "'[i]t is not obvious that the existing policies of [PrimeCare] would have been insufficient to address the serious medical needs of prisoners' including plaintiff."[211] Therefore, the claims against PrimeCare will be dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants Justin O'Donoghue and Wisler Pearlstine's Motion to Dismiss, Defendants Edward Forbes and Jeanne Forbes's Motion to Dismiss, Defendants Donald Cheetham and Legal Aid of Southeastern Pennsylvania's Motion to

---

[206] *Wood*, 568 F. App'x at 104.
[207] Doc. No. 90 at 9.
[208] *Thomas*, 749 F.3d at 222 (quoting *Connick*, 563 U.S. at 64).
[209] *Berg*, 219 F.3d at 276 (citation omitted).
[210] Doc. No. 90 at 72.
[211] *Simonds v. Delaware Cty.*, No. 13-7565, 2015 WL 1954364, at *5 (E.D. Pa. Apr. 30, 2015) (quoting *Dickson v. Cnty. of Gloucester N.J.*, No. 05–1444, 2007 WL 928477, at *5 (D.N.J. Mar. 27, 2007)).

Dismiss, the Pottstown Defendants' Motion to Dismiss, and Defendants Montgomery County, Kevin Steele, Timothy Stein, and Ryan VanDorick's Motion to Dismiss. The Court grants in part and denies in part Defendants Anthony Hoch and PrimeCare Medical's Motion to Dismiss.

In civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."[212] Plaintiff has already had the opportunity to file an Amended Complaint in response to the first round of motions to dismiss, and in the Amended Complaint, Plaintiff has set forth his claims in exhaustive detail, the Defendants have painstakingly responded, and the Court has comprehensively ruled on each claim. Because Yoast has stated a claim against Hoch for deliberate indifference to serious medical needs, the Court will allow him to file a Second Amended Complaint against VanDorick, Stein, Montgomery County, and PrimeCare, with regard to the deliberate indifference claims only, if he is able to do so in accordance with the Memorandum Opinion. Despite spanning hundreds of pages, his allegations against the other defendants fail to state any viable claims stemming from his arrests and prosecutions. Therefore, the Court determines that amendment as to the rest of the claims would be futile and inequitable.

---

[212] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).